UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZUCRUM FOODS, LLC,

    Petitioner,

    v.

MARQUEZ BROTHERS, INTERNATIONAL, INC.,

    Respondent.

_____/

No. C 10-0123 PJH

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND MOTION TO AUGMENT THE RECORD**

This is a case seeking review of a decision by the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office ("USPTO"), pursuant to § 21(b) of the Lanham Act, 15 U.S.C. § 1071(b).

The motion of respondent Marquez Brothers International, Inc. ("Marquez") for summary judgment came on for hearing before this court on March 30, 2011. On May 2, 2011, petitioner Zucrum Foods LLC ("Zucrum") filed a motion for leave to augment the record post-hearing, which Marquez opposes. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motions.

## BACKGROUND

Zucrum, which is located in Arizona, is the United States distribution arm of Grupo Zucarmex, Mexico's second largest private sugar producer and distributor. Zucrum owns Registration No. 2,476,161 for the mark "Azúcar Morena" for "unrefined sugar; brown sugar; molasses." The "azúcar morena" mark has been used since August 1998 by

Zucrum and its predecessors, with respect to its "unrefined sugar" and its "melaza" or molasses. Zucrum also uses the mark on its powdered sugar and picante sugar (sugar with ground chile).

Marquez is a California corporation that is engaged in the distribution and sale in the United States of a wide variety of Mexican-style food products, many of which are imported from Mexico. Among those products from Mexico is unrefined brown sugar, which it distributes in packages labeled "azúcar morena." The Mexican company from which Marquez purchases unrefined brown sugar received a cease-and-desist letter from Zucrum in September 2007, asserting ownership of the mark "azúcar morena" for use on or in connection with brown sugar, citing Registration No. 2,476,161, and subsequently indicated that it was unwilling to continue selling unrefined brown sugar to Marquez, on account of that letter. Zucrum also sent Marquez a cease-and-desist letter, in April 2008, asserting ownership of the mark "azúcar morena."

In October 2007, Marquez instituted a proceeding in the USPTO, seeking cancellation of Zucrum's registration for "azúcar morena" on the basis that the phrase is generic for brown sugar and unrefined sugar. Marquez filed a second amended petition in April 2009. After full briefing on cross-motions for summary judgment, the TTAB issued a written decision on December 11, 2009, finding "azúcar morena" to be generic, and ordering cancellation of Zucrum's registration.

The TTAB began by finding that the genus of goods at issue were those listed in Zucrum's identification of goods – "unrefined sugar; brown sugar; molasses." Zucrum argued that the sugar sold under its registered mark is azúcar estándar, an unrefined sugar, which according to Zucrum is not brown sugar as commonly understood in the United States. The TTAB pointed out, however, that registrability of a mark must be decided on the basis of the identification of goods set forth in the registration, regardless of what the record may reveal as to the particular nature of a respondent's goods. In other words, Zucrum's goods must be presumed to include all types of unrefined sugar, brown sugar, and molasses.

The TTAB then considered whether "azúcar morena" is understood by the relevant public primarily to refer to the genus of goods at issue.  The TTAB first ruled that, since Spanish is a modern and ubiquitous language, the term would be translated into English by the ordinary American purchaser who is knowledgeable in both English and Spanish.  The TTAB referred specifically to Marquez' numerous examples of the generic use of "azúcar morena" in connection with brown sugar, and found that Marquez had made a prima facie showing that there was no genuine issue of material fact that the Spanish term "azúcar morena" directly translates to the English term "brown sugar," one of the products identified in Zucrum's involved registration.

Zucrum contended that "azúcar morena" is not generic because "azúcar morena" or "morena" standing alone can, in another context, refer to a dark-skinned or brunette Latina.[1]  However, the TTAB found this argument and the supporting evidence insufficient to create a genuine issue of material fact.  The TTAB was also not persuaded by Zucrum's argument that its mark is not generic because there are other generic terms that translate to "brown sugar."  The TTAB stated, "Even if we assume, as respondent argues, that the goods at issue could also be identified as 'azúcar terciado,' 'azúcar rubio,' 'azúcar negro,' and other terms, a product may have more than one generic name, none of which is registrable."

On January 11, 2009, Zucrum filed the present action requesting review of the TTAB's decision pursuant to 15 U.S.C. § 1071.  On March 12, 2010, Marquez filed an answer and counterclaim, seeking a declaratory judgment of non-infringement under the Lanham Act; cancellation based on genericness; cancellation based on fraud (two counts); intentional interference with prospective economic advantage; violation of California Business & Professions Code § 17200; and common law unfair competition.

On May 20, 2010, Zucrum filed a first amended complaint, seeking review of the TTAB decision, and also alleging claims of trademark infringement, unfair competition, and

---

[1] The registration included a statement that "[t]he English translation of 'Azúcar MORENA' is 'sugar beautiful dark complexioned brunette Latin girl.'"

3

false designation and description under the Lanham Act; state law claims of violation of Business & Professions Code § 17200 and common law injury to business reputation; and "summary judgment improperly granted by TTAB."

Marquez now seeks summary judgment, on the question whether the TTAB's finding that "azúcar morena" is generic, and cancelling Zucrum's registration, was supported by substantial evidence and should be affirmed. On the same basis, Marquez seeks dismissal of all claims asserted against it by Zucrum in this action.

On April 5, 2011, a few days after hearing on Marquez' motion, Zucrum filed a request with the USPTO to delete "brown sugar" from its registration, to "correct" an "error" pursuant to 15 U.S.C. § 1057. Zucrum asserted that its inclusion of "brown sugar" in its registration for more than nine years was an oversight and a misunderstanding. The USPTO granted preliminary approval of the request, but rescinded that approval on April 18, 2011 after reviewing the file and determining that the present action for review of the TTAB decision was ongoing. Nevertheless, on May 6, 2011, Zucrum filed a request to augment the record in this case to include the USPTO's issuance of preliminary approval of the requested change.

**DISCUSSION**

A.  Legal Standards

   1.  Motions for summary judgment

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 994 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth

4

specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.  The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party.  Id.; United States v. City of Tacoma, 332 F.3d 574, 578 (9th Cir. 2003).

2.    Review of TTAB decisions

Under the Lanham Act, a party that loses before the TTAB may appeal the decision to the United States Court of Appeals for the Federal Circuit on the closed record of the TTAB proceedings.  See 15 U.S.C. § 1071(a)(4).  In the alternative, the party has the option of presenting additional evidence or raising additional claims in the United States District Court in any district where venue is proper.  See id. § 1071(b)(1).

In Dickinson v. Zurko, 527 U.S. 150 (1999), the U.S. Supreme Court held that the appropriate standard of review of findings of fact made by the PTO is not the stricter "clearly erroneous" standard, but the more deferential standard of the Administrative Procedures Act, 5 U.S.C. § 706.  Id., 527 U.S. at 159-65.  Although the Court did not specify whether the appropriate APA standard was "substantial evidence" or "arbitrary and capricious," the Federal Circuit subsequently determined that the "substantial evidence" standard applies to reviews of TTAB decisions.  See On-Line Careline, Inc. v. America Online, Inc., 229 F.3d 1080, 1085 (Fed. Cir. 2000).

Thus, in an appeal to the Federal Circuit, the court reviews the TTAB's legal conclusions de novo, and reviews its factual findings for substantial evidence.  Aycock Eng'ng, Inc. v. Airflite, Inc., 560 F.3d 1350, 1355 (Fed. Cir. 2009).  In an appeal presented in a civil proceeding in the district court, the district court is an appellate reviewer of facts found by the TTAB and is also a fact-finder based on new evidence introduced to the court. See 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition, § 21:20, at 21-26 (4th ed., updated 2011).  Although the district court's review of the TTAB's decision is considered de novo when the parties present new evidence and assert additional claims, the district court also must afford deference to any factual findings made by the TTAB.  See id. § 21:21.

Thus, while new evidence and new issues may be introduced in the district court, an appeal of a decision by the TTAB is a unique procedure because, unlike a true de novo proceeding, findings of fact made by the TTAB are given great weight and are not upset unless supported by substantial evidence. Id.; see also Zurko, 527 U.S. at 162 (1999) (substantial evidence requires reviewing court to ask whether reasonable person might find that evidentiary record supports agency's conclusion); On-Line Careline, 229 F.3d at 1085 (applying Zurko to findings of fact made by the TTAB); Aycock, 560 F.3d at 1355.

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938). The possibility that inconsistent conclusions may be drawn from the same record does not render the TTAB's finding unsupported by substantial evidence. In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

B.     Marquez' Motion

Marquez seeks an order affirming the TTAB's finding that there is no genuine issue of material fact that the Spanish term "azúcar morena" directly translates to the English term "brown sugar," one of the products identified in Zucrum's involved registration; and affirming the cancellation of Zucrum's registration No. 2,476,161 for "azúcar morena," reciting the goods "unrefined sugar; brown sugar; molasses."

     1.     General standards

Marks are normally classified in one of five categories: generic, descriptive, suggestive, arbitrary, or fanciful. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). Suggestive, arbitrary, and fanciful marks are inherently distinctive and thereby automatically are entitled to federal trademark protection because "their intrinsic nature serves to identify a particular source of a product." Id. A descriptive mark is not automatically entitled to trademark protection, but may become protectable if the mark has acquired distinctiveness through secondary meaning. Zobmondo Entm't., LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010) (citing 15 U.S.C. § 1052(f)).

Generic marks have been described as marks which "refe[r] to the genus of which the particular product is a species." Two Pesos, Inc., 505 U.S. at 768 (quotation omitted); see also Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999) ("[a] generic term is one that refers, or has come to be understood and referring, to the genus of which the particular product or service is a species" and such a term "cannot become a trademark under any circumstances") (citation and quotation omitted). Generic marks are not eligible for trademark protection. Zobmondo, 602 F.3d at 1113.

A mark is generic if it "primarily denotes a product, not the product's producer." Anti-Monopoly, Inc. v. Gen. Mills Fun Group, Inc., 611 F.2d 296, 301 (9th Cir. 1979). A descriptive mark, on the other hand, describes the qualities or characteristics of a product. See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir. 2005). Put another way, a generic mark "refers to the genus of which the particular product is a species," while a descriptive term "directly describe[s] the quality or features of the product." One Industries, LLC v. Jim O'Neal Distributing, Inc., 578 F.3d 1154, 1164 (9th Cir. 2009), cert. denied, 130 S.Ct. 1739 (2010).

Whether a mark is generic under trademark law is a question of fact. Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 929 (9th Cir. 2005). To determine whether a term is generic, the court looks to "whether consumers understand the word to refer only to a particular producer's goods or whether the customer understands the word to refer to the goods themselves." Id.; see also Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1058 n.19 (9th Cir. 1999) ("Generic terms are those used by the public to refer generally to the product rather than a particular brand of the product.").

"If buyers understand the term as being identified with a particular producer's goods or services, it is not generic. But if the word is identified with all such goods or services, regardless of their suppliers, it is generic." Yellow Cab, 419 F.3d at 929 (quotations and internal citation omitted). Courts refer to this as the "who-are-you/ what-are-you" test. Id.

7

"A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'" Id. (quotation omitted).

The doctrine of foreign equivalents holds generally that a word commonly used in a language other than English as the generic name of a product cannot be imported into the United States and transformed into a valid trademark. McCarthy, § 12:41, at 12-146. Under the doctrine of foreign equivalents, foreign words used as a mark are translated into English, and then tested for descriptiveness, genericness, and similarity of meaning to determine confusing similarity with an English word. Id. § 11:34.

The test is whether, to those American buyers familiar with the foreign language, the word would have a descriptive connotation. Id.; see also In re Spirits Int'l N.V., 563 F.3d 1347, 1351 (Fed. Cir. 2009). As McCarthy notes, however, the act of translation can itself be an imprecise task, as foreign words sometimes have no exact equivalent in English; therefore, courts may rely on the "primary and common translation" in determining English equivalency. 3 McCarthy § 23:38, at 23-85.

The purpose of the doctrine of foreign equivalents is to protect multilingual Americans. Id., 12-147. In addition, "because U.S. companies would be hamstrung in international trade if foreign countries granted trademark protection to generic English words, the United States reciprocates and refuses trademark protection to generic foreign words." Enrique Bernat F., S.A. v. Guadalajara, Inc., 210 F.3d 439, 443 (5th Cir. 2000).

The doctrine appears to be well-established in registration proceedings in the Federal Circuit and the TTAB, and a number of Circuits in addition to the Federal Circuit have applied it in the context of trademark infringement actions. See Sutter Home Winery, Inc. v. Madrona Vineyards, L.P., 2005 WL 701599 at *6 (N.D. Cal., March 23, 2005) (and cases cited therein). Nevertheless, it is not an absolute rule and should be viewed merely as a guideline.

"The doctrine should be applied only when it is likely that the ordinary American purchaser would stop and translate the word into its English equivalent." Palm Bay Imps.,

Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772, 396 F.3d 1369, 1377 (Fed. Cir. 2005) (citations and quotations omitted).  The "ordinary American purchaser" is not limited to only those consumers unfamiliar with non-English languages; rather, the term includes all American purchasers, including those proficient in a non-English language who would ordinarily be expected to translate words into English.  In re Spirits Int'l, 563 F.3d at 1352.

Finally, the mark holder "bears the ultimate burden of proof in a trademark-infringement action that the trademark is valid and protectable."  Zobmondo, 602 F.3d at 1113.  Federal registration of the mark constitutes "'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark," and that it is not generic.  Id. (citations and quotations omitted).

If the mark has been properly registered, the burden shifts to the alleged infringer to show by a preponderance of the evidence that the mark is not protectable.  Zobmondo, 602 F.3d at 1114.  The alleged infringer may meet this burden by demonstrating "through law, undisputed facts, or a combination thereof that the mark is invalid."  Id. (quotation omitted).  However, the presumption of validity for a registered mark is strong, and the alleged infringer bears a heavy burden to overcome it at the summary judgment stage.  Id.

2. The parties' arguments

Marquez asserts that the TTAB's ruling should be affirmed.  Marquez argues that "azúcar morena" is brown sugar and unrefined sugar, and that the registration is therefore subject to cancellation because the mark is generic.  Marquez contends that the evidence establishes beyond a reasonable doubt that for Spanish-speaking consumers, "azúcar morena" exactly describes and identifies the type of sugar sold by the parties and does not identify sugar from one single source.

Marquez cites to various Spanish-language documents showing "azúcar morena" used to mean "brown sugar," and also to dictionary definitions of "brown sugar."  Marquez contends that "brown sugar" is the broad, generic name for a variety of sugars that range in color from light tan to dark brown, and that the differences in the color of these sugars lies, primarily, in how much molasses each contains; and that raw sugar, unrefined cane sugar,

9

light brown sugar, dark brown sugar, golden yellow sugar, turbinado sugar, muscovado sugar, barbados sugar, and demerara sugar are all encompassed within the genus "brown sugar."

Marquez asserts that dictionary definitions establish the generic nature of the phrase "azúcar morena" (citing several Spanish-language dictionaries, and a number of on-line dictionaries and language translators). Marquez also notes that in its responses to Interrogatories, Zucrum explained that "morena" means the color brown, and that the word "azúcar" means sugar, and that the way Zucrum uses "azúcar morena" establishes the generic nature of the term. Marquez contends that Zucrum uses the phrase in a generic form in its "ZULKA" brand to identify the type of sugar in the package, and in recipes on its webpage, and that Zucrum uses the word "estándar" (standard) and "morena" (brown) interchangeably with "azúcar" to refer to brown sugar. Marquez also notes that Zucrum frequently uses the term "azúcar morena" on its packaging without any indication that it is a trademark.

Marquez asserts further that third-party usage – websites and online grocers, recipe books, competitors' packaging, and internet articles about sugar generally, as well as statements by the Mexican Federal Law on Metrology and Standardization – establishes the generic nature of "azúcar morena."

Marquez contends that the TTAB was correct in finding that the genus of the goods at issue is determined by Zucrum's chosen identification of goods in its involved registration ("brown sugar, unrefined sugar, molasses," with no exclusion for "American brown sugar," which Marquez claims is just another variety of "brown sugar").

In opposition, Zucrum asserts that the mark is not generic, and that "azúcar morena" is a different product than "brown sugar." Zucrum cites to various Spanish-language documents and dictionaries in support of its position. In addition, Zucrum provides a declaration from Jorge de la Vega, its CEO and a native Spanish speaker (also fluent in English) regarding the meaning and use of the phrase "azúcar morena;" a declaration from a chemist employed by the Audubon Sugar Institute, who conducted a chemical analysis of

10

various kinds of sugar; a declaration from a process engineer with experience in the sugar industry; and a declaration from an employee of a focus group company who conducted an informal survey of random Spanish-speaking individuals that he encountered in the vicinity of 16th and Mission Streets in San Francisco, regarding their understanding of the differences between "azúcar morena" and American brown sugar.

Zucrum argues that its "Azúcar Morena" is a different product than "brown sugar," because it is a free-flowing, tan (or pale yellow) unrefined sugar that has very little molasses, whereas "brown sugar" has a higher moisture content and a heavier consistency, and is not free-flowing. Zucrum also asserts that American-style brown sugar is virtually unknown in Mexico.

Zucrum agrees that a "generic" mark refers to the genus of which a particular product is a species, but contends that if a product is not within the genus, but rather is a different product, then it cannot be considered "generic." Zucrum asserts that the evidence shows that "azúcar morena" is a different product than brown sugar, with different ingredients, flavor, color, and consumer uses, and it therefore does not fall into the generic genus "brown sugar." Zucrum argues that the key issue is what the public thinks the word connotes, and asserts that its "consumer survey" shows that Spanish-speakers understand that there is a difference between the two. Zucrum also contends that dictionary definitions of "morena" do not resolve this case; that chemical analysis shows "azúcar morena" to be a different product than brown sugar; and that the "azúcar morena" trademark is used on molasses also, not just on sugar.

Zucrum notes that "azúcar morena" is a trademark that it uses on molasses also, and claims that courts have held a mark to be non-generic where the holder uses it on several products, some of which fit the category of goods for which the mark is a generic term and some of which do not. Zucrum contends that because it produces both an off-white unrefined sugar that competes with regular white sugar (not brown sugar) and a molasses product, which is a natural by-product of sugar cane, and both products share the "azúcar morena" trademark, the mark cannot be considered generic as applied to any

of its products.

The court finds that the motion must be DENIED. As an initial matter, the parties have not made clear to the court which evidence was before the TTAB, and which evidence is being presented here for the first time. Moreover, the court's review of the TTAB's findings of fact is necessarily limited because the TTAB did not make any clear findings of fact. Although it listed the categories of evidence provided by each side, it did not make specific findings supported by specific items of evidence. It simply concluded that there were no genuine disputed issues of fact. Accordingly, the court is unable to review the TTAB factual findings for substantial evidence, and rather than attempting to parse out the evidence, the court reviews the entire matter de novo.

The court finds that the presence of disputed issues of fact regarding the meaning and use of the phrase "azúcar morena" precludes the granting of summary judgment in Marquez's favor. For example, disputed issues of fact remain as to whether the mark "azúcar morena" is generic, and as to how the relevant consuming public understands the term.

## CONCLUSION

In accordance with the foregoing, Marquez's motion is DENIED. Zucrum's motion for leave to augment the record to add a "Change in Registration" is also DENIED. There is no "Change to Registration" to be added, as the USPTO rescinded its preliminary approval of the request for the change submitted by Zucrum.

By separate order, the court refers this matter for assignment to a Magistrate Judge for a settlement conference.

**IT IS SO ORDERED.**

Dated: May 27, 2011

PHYLLIS J. HAMILTON
United States District Judge